UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNION MUTUAL FIRE INSURANCE COMPANY,

       Plaintiff,

-against-

142 DRIGGS LLC,

       Defendant.

MEMORANDUM & ORDER
23-CV-2629 (NGG) (LB)

NICHOLAS G. GARAUFIS, United States District Judge.

In this action, Plaintiff Union Mutual Fire Insurance Company ("Union Mutual") seeks judgment declaring that it has no obligation to defend or indemnify Defendant 142 Driggs LLC ("Driggs") in a pending action in the Supreme Court of New York, Kings County, that it may withdraw from its defense in the underlying action, and that its policies are rescinded and void *ab initio*. (Compl. (Dkt. 1).) Pending before the court is Union Mutual's motion for default judgment on the basis that Driggs has failed to appear. (*See* Not. of Mot. (Dkt. 17).) The court referred this motion to Magistrate Judge Lois Bloom for a report and recommendation ("R&R"). (*See* September 5, 2023 Order Referring Mot.) Judge Bloom issued the annexed R&R on December 11, 2023, recommending that the court grant Plaintiff's motion and award Plaintiff declaratory relief. (R&R (Dkt. 18) at 15.)

No party has objected to Judge Bloom's R&R, and the time to do so has passed. *See* Fed. R. of Civ. P. 72(b)(2). Therefore, the court reviews the R&R for clear error. *See Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 397 (E.D.N.Y. 2014). Having found none, the court ADOPTS the R&R in full.

1

The court thus GRANTS Plaintiff's motion for default judgment, awarding declaratory relief as specified in the annexed R&R, and rescinding Defendant's policies for the periods June 5, 2019 to June 5, 2020; June 5, 2020 to June 5, 2021; and June 5, 2021 to June 5, 2022.

SO ORDERED.

Dated:   Brooklyn, New York
         January 25, 2024

                                              s/NICHOLAS G. GARAUFIS
                                              ―――――――――――――――――
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNION MUTUAL FIRE
INSURANCE COMPANY,

                    Plaintiff,                    **REPORT AND RECOMMENDATION**
                                                        **23 CV 2629 (NGG)(LB)**

    -against-

142 DRIGGS LLC,

                    Defendant.
------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Plaintiff Union Mutual Fire Insurance Company ("Union Mutual") brings this action against defendant 142 Driggs LLC ("Driggs"), seeking a judgment declaring that it has no obligation to defend or indemnify defendant in a pending action in the Supreme Court of New York, Kings County, that it may withdraw from its defense in the underlying action, and that its policies are rescinded and void *ab initio*. Despite service of the summons and complaint, defendant has failed to plead or otherwise defend this action. Plaintiff now moves for a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. The Honorable Nicholas G. Garaufis referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b). For the following reasons, I respectfully recommend that plaintiff's motion for a default judgment should be granted, and that plaintiff should be awarded declaratory relief as specified.

**BACKGROUND[1]**

      In 2019, 2020, and 2021, defendant applied to plaintiff for insurance coverage for the property located at 142 Driggs Ave, Brooklyn, NY 11222 (the "Property"). Complaint ("Compl.")

---

[1] The following background is drawn from the complaint and attached exhibits. All well-pleaded allegations are considered true for the purposes of this motion.

1

¶¶ 10, 20. In all three applications, defendant wrote "No" in response to the question, "Is there parking provided for anyone other than the insured, tenants and their guests?" Id. ¶ 21. Defendant also represented that the Property's mercantile square footage was around 1,000 square feet. Id. ¶ 20. For each application, defendant certified that the representations made were true and would form the basis of the policies issued to it. Id. ¶¶ 22–23.

Upon review of these applications, plaintiff issued a "commercial general liability policy" to defendant, effective for the periods June 5, 2019 to June 5, 2020; June 5, 2020 to June 5, 2021; and June 5, 2021 to June 5, 2022 (the "policy periods"). Id. ¶¶ 9–11. According to the policy's "classification" and "limitation of coverage" provisions, coverage applied only to the "commercial activity" of renting out a "two-unit habitational dwelling" on 1,000 square feet of the Property. Id. ¶¶ 15–19. Plaintiff agreed to indemnify and defend defendant for "bodily injury" or "property damages" subject to those limitations. Id. ¶¶ 14–16.

According to a verified complaint filed in state court on June 30, 2022 (the "underlying action"), Grazyna Pogorzelska[2] was injured on June 18, 2021 at either 142 Driggs Ave or 81 Russell Street in Brooklyn, NY. Id. ¶¶ 9, 22, 45. One of the other named defendants in the underlying action, Jerzy Maziarz, owned, leased, or operated the vehicle that injured Pogorzelska. Disclaimer of Coverage, Ex. A [ECF No. 1-1 at 2].

Plaintiff received notice of the underlying action and began an investigation. Compl. ¶ 28. During the investigation, plaintiff learned that defendant had been renting out three garages on the Property to Maziarz and his brothers during the policy periods, and that Maziarz and his brothers were using the garages to store their vehicles. Id. ¶¶ 29–30. Plaintiff also learned that defendant had misrepresented the Property's square footage. Id. ¶¶ 31–32.

---

[2] Grazyna Pogorzelska is named as a defendant in the complaint. Compl. ¶ 5. Plaintiff filed a stipulation of dismissal as to Pogorzelska on June 20, 2023, ECF No. 14, and Pogorzelska was dismissed from the action, ECF No. 16.

2

On August 3, 2022, plaintiff sent a "disclaimer of coverage" letter to defendant stating that the collision alleged in the underlying action was not covered by defendant's policy, because it did not "arise out of the ownership, maintenance or use of the premises," i.e. renting apartments. Id. ¶¶ 34–35. In a "supplemental disclaimer letter" sent on September 13, 2022, plaintiff reiterated its decision to disclaim coverage based on evidence of false statements made by defendant in applying for insurance coverage. Id. ¶¶ 37–38, 43. The letter also stated plaintiff's decision to rescind coverage on the basis that it would not have issued the same policy for defendant if it had known that defendant was providing parking to individuals other than tenants and their guests, and if it had known the true square footage of the Property. Id. ¶ 39. On or around December 1, 2022, plaintiff returned all premiums for the policies to defendant. Id. ¶ 44. On December 21, 2022, the premium refund checks were cashed. Lambert Aff. ¶ 35, ECF No. 17-2.

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 6, 2023. ECF No. 1. The summons was returned executed on April 18, 2023. ECF No. 7. Despite being properly served, defendant has failed to respond to the complaint or otherwise defend against the instant action. On May 11, 2023, plaintiff requested a certificate of default, ECF No. 12, and on May 17, 2023, the Clerk of Court noted entry of default against defendant pursuant to Federal Rule of Civil Procedure 55(a) ("Fed. R. Civ. P."). ECF No. 13. On July 14, 2023, plaintiff moved for a default judgment. ECF No. 17.

In support of its motion, plaintiff attaches an affidavit by James Lambert, president of plaintiff's third-party claims administrator (Lambert Aff., ECF No. 17-2); a copy of the summons and complaint in the underlying action (Summons and Compl., ECF No. 17-6); the insurance policies that plaintiff issued to defendant for years 2019-2020, 2020-2021, and 2021-2022 (Policy 2019, ECF No. 17-7; Policy 2020, ECF No. 17-8; Policy 2021, ECF No. 17-9); defendant's

3

applications for those insurance policies (Ins. Apps., ECF No. 17-10); the disclaimer letter and supplemental disclaimer letter that plaintiff sent to defendant in August and September of 2022 respectively (Disclaimer Ltr., ECF No. 17-11; Supp. Disclaimer Ltr., ECF No. 17-12); copies of the premium refund checks that plaintiff sent to defendant (Refund Checks, ECF No. 17-13); and defendant's underwriting guidelines (Underwriting Guidelines, ECF No. 17-14).

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on the plaintiff's motion. Id.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Finkel, 970 F. Supp. 2d at 119. Even still, the Court has

4

a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default ... it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the relief that is due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

## DISCUSSION

### I. Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." Mt. Hawley Insurance Company v. Pioneer Creek B LLC, No. 20-CV-150, 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 125-27 (2d Cir. 2011)). "A federal court's jurisdiction generally may be predicated upon federal question jurisdiction, codified at 28 U.S.C. § 1331, or diversity jurisdiction, codified at 28 U.S.C. § 1332." Winter v. Novartis Pharm. Corp., 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014).

"The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) (citation and internal quotation marks omitted). When invoking federal jurisdiction based on diversity, the party must plausibly allege a "matter in controversy [that] exceeds the sum or value of $75,000, exclusive of interests and costs, and is between...citizens of different States." 28 U.S.C. § 1332(a)(1). When a party in a diversity action seeks declaratory relief, "'the amount in controversy is measured by the value of

5

the object of the litigation.'" Mt. Hawley Ins. Co., 2021 WL 4427016, at *3 (quoting Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347 (1977)). If the declaratory relief involves "the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim—not the face amount of the policy." Amica Mut. Ins. v. Levine, 7 F. Supp. 3d 182, 187 (D.Conn. Mar. 21, 2014) (citation and internal quotation marks omitted).

Plaintiff alleges complete diversity between the parties, with plaintiff a citizen of Vermont, and defendant a citizen of New York. Compl. ¶¶ 2–3. Plaintiff also alleges an amount in controversy exceeding the sum or value of $75,000. Id. ¶ 6. Plaintiff seeks declaratory relief involving its obligation to defend or indemnify defendant in the underlying action. While the underlying action's complaint does not expressly allege the value of the Pogorzelska's claims, there is a reasonable probability that the alleged injuries could exceed $75,000. See generally, Summons and Compl., ECF No. 17-6; see also Scherer v. Equitable Life Assurance Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003) ("[W]e recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." (citations and internal quotation marks omitted)); see also Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l - New York Branch, Inc., 821 F. App'x 32, 34 (2d Cir. 2020) (summary order) ("'If the right of recovery is uncertain, the doubt should be resolved…in favor of the subjective good faith of the plaintiff.'" (quoting Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 785–86 (2d Cir. 1994))). No party has shown to a "legal certainty" that Pogorzelska is unable to recover an amount above this jurisdictional threshold. GW Holdings Grp., LLC v. U.S. Highland, Inc., 794 F. App'x 49, 51 (2d Cir. 2019) (summary order) ("Once a good faith representation has been made, the party opposing jurisdiction must show to a 'legal certainty' that the amount recoverable does

6

not meet the jurisdictional threshold." (citation omitted)). This Court has subject matter jurisdiction over this matter.

## II. Right to Declaratory Relief

The Declaratory Judgment Act ("DJA") provides that, "[i]n a case of actual controversy within its jurisdiction,…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Courts commonly acknowledge the propriety of declaratory relief in actions, like this one, initiated by insurers against their insureds to bring certainty to their coverage obligations, particularly where underlying actions against the insured already are pending." Harleysville Ins. Co. v. Certified Testing Lab'ys Inc., No. 22-CV-2764, 2023 WL 4406156, at *6 (S.D.N.Y. July 7, 2023) (collecting cases). A court need not wait for a determination of liability in the underlying action to decide "whether there is, in fact, a controversy over [the insurer's] obligations under the policy." Scottsdale Ins. Co. v. Access Sols. Grp. LLC, No. 17-CV-6793, 2020 WL 9814090, at *4 (E.D.N.Y. Jan. 16, 2020). Rather, "the Court focuses on whether there is pending litigation or the likelihood of future litigation that may require plaintiff to indemnify [defendant]." United States Underwriters Ins. Co. v. Image By J & K, LLC, 335 F. Supp. 3d 321, 346 n.17 (E.D.N.Y. 2018).

Here, the underlying action against the insured raises an actual controversy. Plaintiff received notice of Pogorzelska's claims, and notified defendant and Pogorzelska that it denies coverage. Compl. ¶¶ 25, 33–43. "There is no doubt that…plaintiff's duty to defend…in the underlying…action is an active controversy." Atl. Cas. Ins. Co., 918 F. Supp. 2d 243, 261 (S.D.N.Y.), aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co., 548 F. App'x 716 (2d Cir. 2013) (summary order). Plaintiff seeks relief that, if granted, "will undoubtedly clarify and settle

7

the legal issue of whether [plaintiff] is responsible for providing coverage to defendant[]." GuideOne Specialty Mut. Ins. Co. v. Rock Community Church, 696 F. Supp. 2d 203, 212 (E.D.N.Y. 2010). Thus, plaintiff has met the prerequisites for declaratory relief.

However, "just because a court *may* hear a claim under the [DJA] does not mean that it *must*." LM Ins. Corp. v. Safety Nat'l Cas. Corp., No. 21-CV-1802, --- F. Supp. 3d ---, 2023 WL 6307760, at *21 (E.D.N.Y. Sept. 28, 2023) (citation, internal quotation marks, and alterations omitted) (emphasis in original); see also Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 99 (2d Cir. 2023) (holding district courts retain broad discretion to decline jurisdiction under the DJA). The Second Circuit recently clarified that a district court should consider the following factors among others when considering its use of such discretion:

> "(1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy, and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction[.]"

Admiral Ins. Co., 57 F.4th at 99–100 (citations, internal quotation marks, and alterations omitted).

None of these factors militate against the exercise of jurisdiction in this matter. As stated above, granting a declaratory judgment will clarify and settle the legal issue of plaintiff's

8

obligations to defendant in the underlying action and offer relief from uncertainty. There is no indication that a judgment in this Court will improperly interfere with proceedings in the underlying action, or that there is a better or more effective remedy, or that it will go against judicial efficiency or economy. There is no basis to believe the plaintiff is "engaging in procedural gamesmanship." Harleysville Ins. Co., No. 22-CV-2764, 2023 WL 4406156, at *7. Therefore, declaratory relief is a proper remedy in this matter.

### III. Default Liability

#### a. Material Misrepresentations

Plaintiff seeks relief based on alleged material misrepresentations in defendant's applications to plaintiff for insurance coverage. New York Insurance Law defines a 'misrepresentation' as a false statement "as to a past or present fact, made to the insurer by…the applicant for insurance…at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. L. § 3105(a). A misrepresentation can be "false affirmative statements [or] the failure to disclose where a duty to disclose exists." Scottsdale Ins. Co. v. Priscilla Properties, LLC, 254 F. Supp. 3d 476, 481 (E.D.N.Y. 2017) (citation and internal quotation marks omitted). While an insurance applicant generally does not hold a "duty to volunteer information where no question plainly and directly requires it to be furnished," Vella v. Equitable Life Assur. Soc. of U.S., 887 F.2d 388, 393 (2d Cir. 1989) (citation omitted), applicants must "provide truthful and comprehensive answers to the questions asked in connection with [their] insurance application(s), and fraudulent concealment may at times void an insurance policy even where the fact concealed was not inquired into by the insurer." Scottsdale Ins. Co., 254 F. Supp. 3d at 481.

A misrepresentation is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." N.Y. Ins. Law § 3105(b)(1); see

9

also Diamond State Ins. Co. v. Hidalgo, No. 20-CV-1340, 2021 WL 7906545, at *5 (E.D.N.Y. July 23, 2021) (finding materiality where, had the insurer been aware of the misrepresentation, "[it] would not have issued the policy…or would have issued a different policy." (citation and internal quotation marks omitted)). Thus, an insurer may deny coverage or rescind the policy if it can show it relied on a misrepresentation in issuing the policy, and that the misrepresentation was material. See Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp., 540 F.3d 133, 139 (2d Cir. 2008) (citing N.Y. Ins. Law § 3105(a)). To meet this burden, an insurer is required to present documentation regarding its underwriting practices for similarly situated applicants. Scottsdale Ins. Co. v. Access Sols. Grp. LLC, No. 17-CV-6793, 2020 WL 9814090, at *3 (E.D.N.Y. Jan. 16, 2020). Documentation may include "underwriting manuals, bulletins or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application." Cont'l Cas. Co. v. Marshall Granger & Co., LLP, 6 F. Supp. 3d 380, 390 (S.D.N.Y. 2014), aff'd sub nom. Cont'l Cas. Co. v. Boughton, 695 F. App'x 596 (2d Cir. 2017) (summary order) (citation and internal quotation marks omitted).

Here, plaintiff alleges that defendant misrepresented the Property and the nature of its use by making two false statements in its 2019, 2020, and 2021 insurance applications. First, defendant represented that it did not provide parking to anyone other than defendant, tenants and their guests. Ins. Apps., ECF No. 17-10 at 2, 7, 12. However, plaintiff learned in its investigation that defendant had been renting out three garages located on the Property to Maziarz and his brothers. Compl. ¶ 29. Second, defendant represented that the mercantile square footage of the Property was around 1,000 square feet. Ins. Apps., ECF No. 17-10 at 2, 7, 12. However, the actual square footage of the Property is larger than that represented and what is allowed under the policy. Compl. ¶¶ 32, 39.

10

Plaintiff argues that these misrepresentations are material, as plaintiff would not have issued the policies if defendant had accurately reflected the Property and its use. In support of this allegation, plaintiff submits an excerpt from the "August 19, 2016 Edition" of its underwriting guidelines, which states that insurance accounts with "parking provided for anyone other than the insured, tenants and their guests" present an "unacceptable risk." Underwriting Guidelines, ECF No. 17-14 at 1–2. Plaintiff also submits an affidavit by its third-party claims administrator. Lambert Aff. ¶ 1-2. The affidavit states that plaintiff issued a policy for a "two unit habitational dwelling" with a square footage of 1,000 feet, and that "the policy is limited to the operation of a two-unit dwelling and commercial activity (other than renting the apartments units) that takes place solely within the square footage where the commercial space is located." Id. ¶¶ 16–18, 33. It also states that the underwriting guidelines included with plaintiff's motion "pertain to the issuance of the subject policies." Id. ¶ 36. Under these guidelines, "answering affirmatively to any preliminary application questions" is considered an "unacceptable risk," and had plaintiff known defendant was renting out the three garages as parking space on the Property to Maziarz, it would not have issued the policies it did to defendant; had it known, it would have issued different policies to defendant "subject to a different premium." Id. ¶¶ 37–39. While the submitted guidelines may be out of date,[3] these guidelines considered with the claims administrator's affidavit are sufficient to show that defendant made material misrepresentations, and that plaintiff relied on these misrepresentations in issuing the polices in this matter.

### b. No Duty to Defend or Indemnify

"An insurer's duty to defend its insured is a contractual obligation," created by the terms of the policy and triggered by the allegations of the underlying complaint. Atl. Cas. Ins. Co., 918

---

[3] The guidelines are dated August 2016.

11

F. Supp. 2d at 252. "Generally, where allegations in a complaint fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be, there is a duty to defend." Id. (citing Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 82 (2d Cir. 2006)). The duty to defend persists "until it is determined *with certainty* that the policy does not provide coverage." Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original). "Unlike an insurer's broad duty to defend, the duty to indemnify 'is determined by the actual basis for the insured's liability to a third person and does not turn on the pleadings, but rather on whether the loss, as established by the facts, is covered by the policy.'" U.S. Underwriters Ins. Co. v. Falcon Constr. Corp., No. 02-CV-4179, 2004 WL 1497563, at *5 (S.D.N.Y. July 1, 2004) (quoting Atlantic Mutual Ins. Co. v. Terk Technologies Corp., 309 A.D.2d 22, 28 (1st Dep't. 2003)).

To succeed on a claim that the terms of the policy bar coverage, the insurer must demonstrate the allegations of a complaint are "solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation." CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 77 (2d Cir. 2013) (citation and internal quotation marks omitted). "[A]fter an insurer establishes that a policy exclusion applies, the burden shifts to the policyholder to prove that an exception to that exclusion applies." Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co., 702 F.3d 118, 122 (2d Cir. 2012). Notwithstanding this burden shift, any ambiguity in the policy's language must be construed against the insurer and in favor of the insured. Id. at 124. "[I]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co., 934 F. Supp. 2d 533, 540 (E.D.N.Y. 2013) (citation and internal quotation marks omitted).

12

Here, plaintiff argues that it is not obligated to provide coverage due to the policy's "limitation of coverage" and "classification limitation." Lambert Aff. ¶¶ 12–13. The policy states that coverage "applies only to 'bodily injury', 'property damage', 'personal and advertising injury' and medical expenses arising out of [t]he ownership, maintenance or use of the premises shown in the Schedule" and "operations described under the Schedule[.]" Policy 2019, ECF No. 17-7 at 88–89; Policy 2020, ECF No. 17-8 at 88–89; Policy 2021, ECF No. 17-9 at 88–89. The policy's declarations page provides a "description of [the] premises" as two "habitational apartment units" comprising 1,000 square feet located at 142 Driggs Ave, and that "all commercial activity, other than renting the apartments[,] is taking place solely in the square footage listed[.]" ECF No. 17-7 at 4; ECF No. 17-8 at 4, ECF No. 17-9 at 4.

According to the allegations in the underlying action, Pogorzelska was injured by an automobile owned by Maziarz at 142 Driggs Ave "and/or" at 81 Russell Street. Summons and Compl. ECF No. 17-6 at 7–9. In September and August 2022, plaintiff sent defendant disclaimer letters explaining that the policy "only provides coverage described in the policy's declarations page." Supp. Disclaimer Ltr., 17-2 at 5–6; Disclaimer Ltr., ECF Nos. 17-11. Thus, plaintiff's position is that because coverage is "limited to the operation of a two unit dwelling" and Pogorzelska is "asserting an automobile liability claim[,]" the underlying action is not covered by the policy, and plaintiff is not obligated to defend defendant in the action. Supp. Disclaimer Ltr., 17-12 at 6. Accepting plaintiff's allegations here as true, the Court finds that plaintiff is entitled to a declaration of no coverage in the underlying action. See Diamond State Ins. Co., 2021 WL 7906545, at *8 ("The case authority is clear that an insurer has no duty to defend or indemnify when the declaration page of the policy limits coverage to the designated premises and the injury occurs at a location not listed in the designated Premises endorsement." (collecting cases)).

13

.

### c. Rescission

"Under New York law, an insurance policy is considered void *ab initio* if the insured made misrepresentations to the insurance company that were material to the issuance of the policy." John Hancock Life Ins. Co. v. Perchikov, 553 F. Supp. 2d 229, 236 (E.D.N.Y. 2008) (citation omitted); see also Cont'l Cas. Co., 6 F. Supp. 3d at 389 (finding that an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations). Once a policy is considered void *ab initio*, "all obligations under [the] rescinded policy are…extinguished." Scottsdale Ins. Co., 254 F. Supp. 3d at 480–81 (citation and internal quotation marks omitted). Unlike claims related to the duty to defend or indemnify, an insurer may bring a claim for rescission even absent a pending action, as the "claim to rescind its policies is by itself a justiciable controversy[.]" Falls Lake National Ins. Co. v. Nexus Builders Corp., et al, No. 21-CV-1403, 2022 WL 992714, at *3 (S.D.N.Y. Mar. 31, 2022) (quoting Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan, 77 F.3d 48, 51 (2d Cir. 1996)); see also United States Underwriters Ins. Co. v. Orion Plumbing & Heating Corp., 765 F. App'x 534, 537 (2d Cir. 2019) (summary order) ("[R]escission claims may be justiciable even absent a pending claim.").

Other courts have ordered rescission where the insured materially misrepresented a property's operation or use in applying for insurance coverage. See, e.g., Diamond State Ins. Co., 2021 WL 7906545, at *6 (recommending rescission where the insured misrepresented the property as a one-family dwelling when the building had in fact been demolished to construct a three-unit apartment hotel); see also Lema v. Tower Insurance Co. of New York, 119 A.D.3d 657 (2d Dept. 2014) (rescinding a policy where the insured represented the property as a two-family dwelling when it was in fact a three-family dwelling). Therefore, given plaintiff's material misrepresentations as to the Property and its use, the Court should grant plaintiff's motion and

enter a declaratory judgment rescinding the three policies for the periods running from June 2019 to June 2022.[4]

## CONCLUSION

Accordingly, I respectfully recommend that the Court should grant plaintiff's motion for a default judgment declaring that it is not obligated to defend or indemnify defendant in the underlying action and rescinding defendant's policies for the periods June 5, 2019 to June 5, 2020; June 5, 2020 to June 5, 2021; and June 5, 2021 to June 5, 2022.

Plaintiff is hereby ordered to serve a copy of this Report on defendant at their last known address and file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: December 11, 2023
       Brooklyn, New York

---

[4] Plaintiff also contends that defendant "ratified" the rescission of the policies by depositing the premium refund checks sent to defendant. Plf. Mem. of Law at 5. Copies of the refund checks sent to defendant are attached as exhibits. ECF No. 17-13.